May it please the court. I will focus on the Frank's claims as our briefs have done. Allowing the result below to stand would tell line-level federal officers they can violate core Fourth Amendment rights with impunity so long as they first trick a magistrate into issuing a warrant. Frank's claims here involve the same problem Bivens itself broke line-level federal law enforcement officers violating Fourth Amendment rights during standard operations in United Territory. The decision below would enable such officers to nullify Abassi's mandate to preserve Bivens claims in common law enforcement contexts simply by illegally obtaining a warrant before committing the same types of violations as in Bivens. That contradicts existing precedents as this court's recent decision in Hicks shows. Hicks provides. Can I just ask a quick question I think sorry I needed a second to get oriented but I think you started by saying that you wanted to focus on the Frank's claim is that right? Yes your honor. Okay so the district court in doing the Bivens analysis sort of focused on the overall claim at issue this sort of wide-ranging conspiracy that involves investigators and prosecutors starts at the search warrant application and goes all the way through to post-trial proceedings and said when I look at this thing as a whole this is a new context and there are special factors counseling hesitation. Is that not the right way to look at this you think we need to go claim by claim? Absolutely your honor. It is appropriate to go claim by claim the district court erred by conflating multiple claims. It is different claims can arise from totally different contexts and to the obtaining of a search warrant some of the other claims are based on events you know years later and to conflate them all into one big lump and treat one case as a whole that would be inconsistent with precedent including for example the Sixth Circuit's post-Debasi decision in Jacobs which analyzed the claims claim by claim. Well I hear you this is Diana Motz I hear you I'm sorry Judge Harris did you have a follow-up? No no please go. I hear what you're saying but all the claims have to pass the Bivens argument or most of them do and the immunity arguments so and those are those standards for Bivens and standards for the immunity are universal so I'm not sure I was incorrect for the district court to follow the procedure it did. I can understand why you disagree with the district court's conclusions with respect to immunity or the Bivens claim but I don't understand why he would have had to do it claim by claim. Well your honor the Frank's claims involve only two individual line level officers whereas some of the other claims involve as many as four or five different law enforcement officials including prosecutors. What difference does that make with respect to whether Bivens applies to them or whether they have immunity? You look at each individual person to be sure but I don't understand why you'd have to go claim by claim. I still don't understand. Well I mean if your honor if the court were not to go claim by claim but and it has I believe in cases in the past such as Eunice gone claim by claim which if it didn't go claim by claim you would have a result that would unfairly deny remedy as to someone who was who's fourth and violates in the heartland of Bivens or violated simply because some sometime later in the case you know a high-level official got involved and something wrong. That would be unfair. It wouldn't be fair to deny a remedy simply because you know let's say the US Attorney General got involved and and you know that's part of the case. It would be it would be fundamentally unfair to deny a remedy and would be inconsistent with the deterrent purpose of Bivens that Abbasi reaffirmed. It would be inconsistent with Abbasi's mandate to preserve Bivens claims in the fourth amendment search and seizure context just because there's a due process violation later by a high-level official that would just be unfair. But counsel I totally understand your kind of common sense argument that just because you know the the wrong is so grievous that it goes all the way up to the US Attorney doesn't mean that we should come to a different result but I'm kind of worried that it does mean we should come to a different result under Abbasi because I mean I think your hypothetical is really good if these investigators are going to come in and say oh I was you know who else was in on it the US Attorney. I don't see how that doesn't make it a different context for purposes of Bivens. Well your honor there's nothing like that in Bivens. It was just these two guys I think two guys kind of on their own doing misconduct. Well your honor in fact Hicks actually shows that the involvement of a supervisor shouldn't change the analysis. There was a supervisor who arrived in the scene in Hicks. That supervisor let the plaintiff who was the US Secret Service agent by the way a pretty significant difference from all the other cases and certainly Bivens itself a plaintiff was actually a law enforcement official and so was waiting for a motorcade on the highway and it was part of his mission and showed his credentials. The supervisor actually arrived and let the plaintiff leave and the court did not deem that to be relevant to whether there was a new context. It's here in this case the there's no allegation or evidence that any high-level official had anything to do with the Franks violations. We're talking about two line-level law enforcement officials. They are defendants Leidy and Mosley. You know this as your honor seems to be suggesting this if the US attorney himself were involved or if the Deputy Attorney General were involved that could be a certainly a different case. But that's not this case and you know we simply have here line-level law enforcement officials and that's that's just not meaningfully different from Bivens itself and to view the case as a Sorry counsel can I can I just assuming we're looking just at the Franks claim I hear what you're saying you know line-level law enforcement officers but you know a whole bunch of Fourth Amendment law really does emphasize the getting of a warrant as a distinct phase of the process and we treat kind of pre-warrant and post-warrant context very very differently and so you know getting a warrant is like a whole big deal with a whole separate set of rules and so why does it why isn't that enough to make it a different context that this involves getting a warrant which you know which Bivens didn't. Well Evans versus Chalmers although it's not a Bivens case holds that where law enforcement agents mislead a prosecutor in the course of initiating a prosecution that's a viable claim and that's certainly at the heart of the Fourth Amendment common and recurrent standard operations context that Abbasi mandates be preserved. The fact that you know there are some later events that are unusual or different from core Fourth Amendment situations I mean Frank's claim as this court said in LeBron I mean district courts routinely address questions of probable cause in Humbert where no Frank's claim was raised in the district court was raised in the criminal case. I know it's on a Bivens case but I'm just pointing out the fact that many years later the plaintiff brought a Frank's claim and this court upheld the Frank's claim. Now my point in saying that is that it would be fully consistent with this court's jurisprudence to make a distinction between the events that happened months and years after obtaining the search warrants that destroyed PharmaCare and the search warrants. I mean these are these are simply different things. The Fourth Circuit has this court has not looked at it's not conflated different claims and different types of constitutional violations by different groups of different levels of law enforcement officials the way that the district court did. Now I do want to quickly point out some of the factual differences in Hicks and there are more than 10. There's more than 10 ways that the facts in Hicks differ from Bivens itself in ways that are no less significant and supposedly meaningful differences the district court identified for the Frank's claims here. These differences these differences include one the plaintiff as I mentioned earlier was a U.S. Secret Service agent during the events at issue. Two, the two defendants Ferreira and Phillips were officers of the U.S. Park Police. That's an agency that was not involved in the in Bivens or any other previous case Bivens case. Third, Hicks was stopped twice each time by a different officer. Fourth, Hicks was allowed to leave in between the two stops. Fifth, when the first stop occurred. Counsel sorry I'm sorry well actually I probably I was about to say I remember Hicks really well but so I remember Hicks very well but bottom line Hicks was two low-level law enforcement officers conducting a warrantless search and seizure. Exactly what happened in Bivens. This is about investigative officers doing this complicated sort of data analysis, running reports, construing them, figuring out what's probable cause what isn't, going to a magistrate, getting a warrant. Those I mean I think you have to address why that isn't enough to make this at least a different context and then I guess I would invite you to address also even if it's a different context maybe you want to argue there aren't special factors counseling hesitation. If it's a different context that's not the end of the inquiry for you. Correct you are absolutely and thank you. Now with respect to your first question the Supreme Court's decision in Grow which was cited in our papers that involves a Bivens claim based on a defective search warrant and in that case the Supreme Court held there's a fourth amendment violation where an ATF agent prepared and signed that application for a search warrant and led a team of law enforcement officers including both federal agents and members of the local sheriff's department executing the warrant and the court held that qualified immunity from the Bivens claim did not apply and that the warrant violated the fourth amendment. So the presence of a warrant is not a basis under Supreme Court precedent for distinguishing this case from Bivens itself and I would point out that in Hicks this court recognized that pre-Abbasi cases recognizing Bivens claims even without conducting the Abbasi test remained good law. For example it cited this court's 2006 decision in Schwartz and a DC circuit decision by then future Justice Ginsburg in 1987 to support its conclusion. With respect to the special factors and that is a standalone basis for reversing as your honor suggested the special factors analysis by the district court here was erroneous in a number of ways that require reversal. Most notably the causation inquiry was completely off respectfully with all respect there was no there's no kind of deep dive causation inquiry required for looking at a Frank's claim. As the sports had LeBron as I mentioned earlier the courts consider questions of probable cause all the time and Frank's claims are routinely addressed in civil cases and criminal cases. Now the alternative remedies analysis was really kind of the thrust of the district court's opinion and there it really just followed Farrah which applies an analytical framework like its companion recent case in Ahmed that is fundamentally inconsistent with both Abbasi and this court's decision in Hicks. The remedies analysis under Abbasi, Abbasi preserves pre-existing cases at sites with approval that make clear there has to be an adequate remedy may I just well I can address the rest later. Okay well I just want to point out real quick your honors in this case neither none of the remedies the order sites creates not the Hyde amendment not the wrongful condition statutes that Farrah sites they don't create any process for remedying the the protecting the interest of Mr. Annapurati and Farmacare in obtaining compensation for the disruption of his business. Not only did the nor did the dismissal of the criminal indictment do anything to protect that interest only the Frank's claims under Bivens can allow Farmacare and Mr. Annapurati to obtain a remedy against defendant Slating and Mosley for causing that injury and as Chief Justice Rehnquist wrote in Malesko when a plaintiff lacked any alternative remedy that's that's a situation where the court has extended Bivens and that's a situation with the Frank's claims here it's damages or nothing and with respect to the FCC a part of the district courts analysis very your honors that just a bossy leaves intact Carlson which like we holds that the FTCA and Bivens are parallel and complementary remedies the district court violated Agostini's mandate that the Supreme Court has the prerogative to overrule its own decisions in deciding that it can consider the FTCA claim as a separate remedy. Thank you. Thank you Mr. Greenberg. Yes may it please the court the plaintiff is asking told my client Ms. Pascal a prosecutor liable for failing to preserve evidence allegedly for the express purpose of undermining his defense in an ongoing prosecution and merely by stating plaintiff's thesis this establishes this case falls within the heartland of absolute prosecutorial immunity and what the plaintiff does is try to spin his way out by saying that this particular act of failing to preserve evidence document destruction is always administrative no matter the context and we know that any argument that depends on such a bright line distinction that a certain act is always administration administrative regardless of context is wrong under Van de Kamp versus Goldstein. Can I ask you counsel yes in what way was your client involved in the investigation prior to the fall of 2013? There is an allegation about my client being involved with the Maryland Attorney General's office but it is a single sentence but that's not part of the complaint in terms of what the activity was and what my clients involvement was. It's not part of the complaint but there's an background allegation that before my client became a special a USA on this that she had been involved at the investigative stage with the office of the Attorney General of Maryland and but isn't that pretty important with respect to the claims against her? I don't understand. It is not important with respect to the particular claims that are alleged against her your honor. The particular claim being alleged is that she participated in the destruction of documents and under Van de Kamp your honor the we asked three questions. The first is does the act post date the probable cause determination? Second does it relate to the specific prosecution of the tort plaintiff? And the answer to all three is yes and that is why immunity attaches and actually to answer your question a little bit more Judge Motz the case of Nero versus Mosby definitively settles that because in Nero versus Mosby Ms. Mosby went on camera and said that she personally had been involved in the investigation and that was undisputed but the act that she was accused of the particular acts giving rise to liability according to the complaint those were in her capacity as a prosecutor and what this court further held in footnote four of Nero versus Mosby was that a generalized allegation of impropriety during the investigative stage but without particularly alleging an act that would give rise to liability was not enough to overcome. Was your client personally involved in handling post trial motions? I am not sure of the answer to that your honor what I do know is and I apologize if perhaps I should know the particular answer I mean she was the special assistant U.S. attorney working with Ms. Wilkinson during that time so I will say yes she's involved in that in that sense I mean she is signing the pleadings. But at the time when the decision was made to destroy the evidence? Yes. Was she involved then? Yes she absolutely was involved in the ongoing defense and the post trial motions and there's no dispute about that your honor. Can I ask you a question Mr. Krupp? Just about just while we're talking about the complaint and the allegations I know you're right now talking about destruction of evidence but is there also a claim as to fabrication of evidence before us and do we also have a fabrication claim? There is not a fabrication claim your honor for the reasons well let me say this the district court said there was a fabrication claim that was and said that those could proceed. Now this all goes to footnote four of Neera versus Mosby which in that case there were some conclusory allegations of an impropriety. Here we have something that's even further away from the pleading standards because what the plaintiff said in counts 19 and 20 that the district court held were in reverse incorporated into the earlier state law counts. What those said was expressly we have no reason to believe that Miss Pascal and Miss Wilkinson were involved in the fabrication of evidence but if discovery should show something different then we make these alternative claims. So this is a contingent claim that is expressly speculative on what may or may not emerge in discovery and of course cannot survive the claim floating around somewhere that even as the complaint says they didn't know anything about this before the indictment right that's what the complaint says yeah but that there might that there still remains a post indictment claim for fabrication of evidence which I understand you think would be subject to complete and absolute immunity under Buckley but is there a claim floating around here that post indictment they for the retrial fabricated evidence I don't believe there's such a claim your honor and if not certainly our main issue that we have on this point is that the plaintiff expressly says at some point in time maybe something happened and that is not enough we have not been given the fair warning of what the allegations are. There was discussion during the first argument this morning about remedies there was a lot of discussion about remedies and I think counsel I'm sorry before you go on actions the basis for counts 15 16 and 17 what about 15 so what those accounts did was they expressly were stating side by side state liability as an alternative to the federal liability and so they've rested on the same allegations as they the district court held that and I don't think there's dispute that those state law accounts incorporated the allegations of document destruction and then it wasn't clear whether they then incorporated the subsequent counts that had this set of expressly alternative facts that hypothetical facts and so there was no stand-alone liability no stand-alone facts that were alleged it was merely a different cause of action and they were inextricably intertwined in the same way as in your versus Mosby this court took in that case took all causes of action arising out of particular factual nucleus and examine them together this was not a claim-by-claim analysis I would like to make a point about remedies that came up a lot during the first argument today and I think that all lawyers have become experts in remedies since November if you're simply following the legal news when the courts say that absolute prosecutorial immunity applies they are not saying the plaintiff has no remedy all they are saying is that the remedy is a motion in the criminal case and that is the pennate case from the First Circuit that plaintiff relies on and the Singleton case from the Fifth Circuit the plaintiff relies on those are all cases where the courts noted there was no remedy in the criminal case for this action and here that one of the things that I learned in the course of handling this appeal is in Imbler it's not just talking about we don't want to chill prosecutors actions we also think that absolute prosecutorial immunity benefits defendants because the courts do not want a judge in Judge Russell's position here to worry even subconsciously about the prosecutors facing civil liability because there is a fear that that unconscious knowledge could could affect the truth seeking function on the motion for sanctions and you know I'm a lawyer who does a lot of appeals and post conviction work on the criminal side federal and state and it is hard enough getting relief on a motion for sanctions or post conviction motion as it is and I can absolutely say that what nobody wants on that on this is to make it even harder if there is something that might cause a judge subconsciously to back away from a finding that relief is available because as hard as it is get relief getting relief on appeal is even harder and counsel I'm sorry to interrupt you again absolutely judge but I am interested in your client and you would agree with me to the extent that a fabrication was investigative she has no immunity if the conclusion were investigative in the traditional sense now we don't know the facts that are she is alleged as to my client there may be a set of facts now what my okay so for the co-defendants you haven't conceded anything I just want to not concede but what I'm saying is that you'll particular I'm sorry I've just wanted to say then going back to count 19 yes it pleads in the alternative that she engaged in one or more overt acts in furtherance of the conspiracy deliberately fabricating materially false evidence now count 19 is a Bivens claim but that's the factual basis it's put forward for it it was dismissed but is it possible that the allegations of fabrication under this claim could support the state law claims in count 15 no your honor and I was I'm sorry they could support under the plaintiff's theory he could have been pleading that but in that regard what I would do is I would incorporate the arguments that the the lading defendants are making here which is that the particular act of fabrication that was alleged in the complaint was putting together summaries for presentation to the grand jury and as those defendants have said and I think argued correctly that would still be a post probable cause determination at that point and so if there were an allegation that my client were involved in it because it would have to relate to some fact in the complaint in that alternative world your honor had the plaintiff properly pleaded that there would still be immunity on those facts for the reasons that that lading argues so what you're saying to me is no this doesn't work because the state law explain couldn't have been the basis for this so what you're saying I believe what I'm saying is that the state law claim doesn't have any independent facts and the only facts that could draw would be from elsewhere in the claim and counts 19 and 20 don't have any facts you know the time does but what you're saying is I just can't roam around looking for a basis for the claims in 19 and 20 so Rob certainly nothing that is alleged in the would be something that would fall outside absolute prosecutorial immunity on these facts for the reasons that the lading defendants argue if my client was a party to the lading allegations then in that circumstance their absolute prosecutorial immunity would apply for the yes your honor may please the court good morning my name is Brian Fry and I represent Sandra Wilkinson and I'll be speaking as to the non Frank's defendants and counts 11 and 13 the under Bivens I'm just trying to get situated that's correct thank you as to the non Frank's defendants as we argued in our brief it's our view that the claims against is Wilkinson mr. Coppola Bianco and mr. Ryan have effectively been waived on appeal because they were not meaningfully pursued in the opening brief and mr. Greenberg effectively confirmed this fact this morning I think the first thing he said was they focused on the Frank's claims as our briefs have done there are simply no substantive allegations as to the non Frank's defendants in the opening brief and under this court's precedent those claims should be deemed waive the mr. Anna Paredes attempts to briefly resuscitate them in reply was simply too late that being said your honors are interested in hearing as to the non Frank's defendants and I presume as to the Frank's defendants as well as to claims 11 and 13 involving purported fabrication of evidence in count 11 and destruction of documents in count 13 I'm certainly happy to speak to those on the substance of the in the underlying briefing in the underlying arguments in this case counsel for mr. Anna Paredes cast a story about a grand overarching conspiracy which reportedly involved all of the defendants in this case working in concert to falsify search warrants and evidence and to destroy documents critical to mr. Anna Paredes defense and as is not a surprise as a result the court's opinion below focused on an analysis consistent with the way that the case had been argued below on appeal mr. Anna Paredes counsel has attempted to shift the case has expressly dropped counts 9 and 19 19 being the conspiracy count that was recently discussed and has instead chosen to focus on the Frank's defendants in an apparent recognition of some of the challenges that the arguments below face and were highlighted in the courts well-reasoned decision dismissing many of the counts against the defendants so your honors we submit that in the context of counts 11 and 13 the court should it choose to engage in an Avasi analysis and again we think that that's not necessary given the waiver issue we think that this is clearly a new context Abazi declared and Hernandez confirmed that any meaningful difference even if small between a given claim and an acknowledged Vivian's claim is sufficient to find a new context and here as to counts 11 and 13 the differences are certainly far from small existing Vivian's precedent has never recognized a cause of action based on a violation of substantive due process under the Fifth Amendment and your honors we submit that that fact alone is sufficient to find a new context in this case we also note that the differences and roles among the various defendants named in counts 11 and 13 are meaningful as to miss Wilkinson for example she's a federal prosecutor and there's no existing Vivian's precedent recognizing a cause of action against a federal prosecutor and certainly for alleged destruction of documents as to mr. Coppa Bianco Vivian's precedent again has not recognized an action against someone in his position he was an in-house investigator at the US Attorney's Office and there's certainly been no cause of action recognized for someone who did something so minimal as conducting data analysis and supporting a prosecution and as to mr. Ryan the alleged conduct involving purported fabrication of evidence and destruction of documents likewise in presenting an entirely new factual context simply put a we submit that there is no real argument in this case that this is a new context and therefore the court must consider a special factors analysis turning to that analysis as your honors know per a bossy a special factor is one which causes the court to hesitate in finding that the judiciary is well suited to consider and weigh the costs and benefits of allowing damage as actions to proceed and it's not a question of whether a remedy should exist it's who should decide and the Supreme Court is instructed that the answer will most often be Congress as your honors are well aware this court has declined to extend Vivian's repeatedly in the post a bossy context and as cited in our let me just ask you a question about the special factors assuming for a minute that we could isolate the Frank's claim and say look we need to go claim by claim by claim if there's a prosecutor it's out if it's the Fifth Amendment it's out but look here's one that's just Fourth Amendment line level police officers we're only going to look at this one so what are the special factors counseling hesitation on the Frank's claim because as your colleague says we do those all the time under 1983 and it doesn't involve any you know it hasn't been disruptive as far as we know that we have to probe into the magistrates mind figure out what's material what's not material whether there was deliberate or reckless falsehood what's so disruptive what's the special factor that would prevent us from doing that on the federal side and your honor forgive me at the outset I should have noted that miss Buckman will be speaking to the Frank's defendant claims and I'm sorry sorry sorry I'm sorry I don't understand the division of labor here I should I have the sheet and yet I can't keep it sorry going I'll ask miss Buckman it's fine sorry she'll be speaking to those claims and mr. Wintermeyer will be speaking to the immunity claims I exceeded my a lot of time at this point and I'm happy to pass the argument along to miss Buckman who can address judge question thank you mr. free miss Buckman may it please the court Jody Buckman counsel to special agent Mara lading I'll be addressing the Bivens claims against agent lading and agent Mosley relating to the warrant affidavit the so-called Frank's claims mr. an apprentice main argument is that the evidence claims alleged Fourth Amendment violations by line level federal agents are per se valid and the court does not have to conduct the Abbasi test it supported this argument in a priority cites a few Bivens cases that did not conduct the Bivens analysis and makes the sweeping conclusion that in so doing these courts recognize the validity of the business plan that is not what these cases hold or conclude the case is either a bossy argument it's not raised by the defendant in the case or the court dismissed we don't believe that's a reasonable inference from the holdings of the cases we believe that a bossy and this progeny required the court to conduct the Abbasi analysis and I would refer the court to a recent 8th Circuit case from December of 2020 called Ahmed versus Weicker you may recognize the name Weicker it's also the defendant in the Farah case case came out of the 8th Circuit the plaintiffs allege that an investigator violated their Fourth Amendment rights by providing false information and submitting a false affidavit leading to their arrest the court held it was required to conduct the Abbasi analysis even though the case involved a Fourth Amendment violation by a federal agent turning to the above there are at least five meaningful differences between Bivens and the was not a warrantless search and seizure of a private citizen here search warrants were issued for corporate property owned by PharmaCare's legal entity at multiple locations and these after these warrants were issued based on an affidavit which was the culmination of a year plus investigation by a federal health care task force the Weicker case that I just referenced your honors there's a quote from it that says lying and manipulation however bad they may be are simply not the same as the physical invasions that were at the heart of Bivens we would submit this is the same situation here as it was in that Weicker case and as it was in the Farah case out of the 8th Circuit the Cantu case out of the 5th Circuit and the Karkalis case out of Pennsylvania where investigatory and case-solving activities presented a new concept. The second meaningful difference is that the five Bivens appellees are from four different agents unlike the agents in Bivens and I recognize for the Frank based claims this is Maura Lading and Robert Moseley but Maura Lading and Moseley were from different agencies and in the Cantu versus Moody case out of the 5th Circuit the court held that a claim involving different conduct by different officers from a different agency presented a new content. Third, proving these claims would require the application of a different legal mandate than Bivens and this is one of the factors listed in Abbasi for creating a new context. For a false warrant affidavit claim the proof would require the plaintiff to establish that the statements were false, they were made knowingly and intentionally or with reckless disregard for the truth and that without them there would be no probable cause and this is a quote from the recent case of Ahmed versus Weicker. Bivens did not require this type of fact-checking and conscious probing which can, as the pre-court has warned, impose substantial consequences. The fourth way this is that Mr. Annapredi seeks damages for warrants executed on corporate entities to search for corporate properties. Mr. Annapredi himself was not searched. Mr. Annapredi himself was not seized. Mr. Annapredi was in Las Vegas when the searches occurred. Mr. Annapredi tries to get around this problem with the doctrine of ratification to allow the pharma care entities which were not planned as part of the complaint. Although this applies as not, your honors, it certainly presents a meaningful difference for Bivens. It also raises the question of whether a corporate entity can assert a Bivens claim. I will put, your honors, to a case study in our brief called Lifesaver's Concept where a corporate entity asserting a Bivens claim on behalf of employee presented a new context. We believe, at a minimum, a corporate entity asserting a Bivens claim, if the doctrine of ratification is allowed, is a meaningful difference with Bivens. Fifth, and finally, Lading and Mosley were not the proximate cause of Annapredi's alleged injuries. The district court correctly looked to FERA on this point. There were numerous intervening acts between the warrant affidavit and Mr. Annapredi's alleged injury. I will now turn to the second part of the test, the special factor. The district court did not err in concluding that special factors counsel hesitation in extending Bivens to the new context present in this case. First, the claims pose risk of intrusion into the executive branch authority to enforce the law and prosecute crimes. Okay, can I stop you there? Because that's sort of where my question was. Why is that especially disruptive? Why does that counsel hesitation under Bivens when it doesn't under Section 1983? We do it all the time. We inquire into the magistrate with the attendant risk to interference with the law enforcement efforts of state law officers all the time. So why is it especially problematic if we do it with federal officers as well? It seems like we'd just be doing the same exact thing. I will submit, Your Honor, it's different in that there was no Frank's claim raised during the criminal part of this case. Yeah, I don't know. Why does that matter? Just because it would be harder for us to do it because we'd have to go back a couple of years? Yeah, I mean, more than 70 years. But yes, Your Honor, it is a special factor noted in Bivens noted by the district court. And we believe... So I'm sorry, I just want to make sure I understand. So your answer would be we could write an opinion saying in this case, special factors counsel hesitation in a way they would not had the Frank's claim been raised below during the original criminal prosecution. I think that's a distinct difference. I also would point the court to that Ahmed versus Weicker case that with regard to the level of expense that's involved and looking at affidavits some years later. We also believe there are remedial structures that were potentially available to Mr. Annapredi. As noted by the district court and by the Eighth Circuit in both Farah and the Ahmed case, there is the Hyde Amendment, the 28 USC 2225, the Federal Tort Claims Act claims. And we cited cases in our brief where courts have found that the Federal Tort Claims Act claims were special factors did fit within that analysis. And also the court... Sorry, sorry, counselor, because I really am bearing down on this one. I understand and I read Farah, I understand sort of the argument that, look, just the mere fact that this particular plaintiff might not be able to get relief under any of those alternative remedial structures isn't dispositive. But isn't there an argument that there's something more going on here that like none of those remedial structures really has anything to do with this stage of the Hyde one and the other, the second one you said. They're not really about this stage of the criminal prosecution. They're about you're prosecuted impermissibly or you're exonerated later. This is just about getting a search warrant. And I mean, the Federal Tort Claims Act, I understand, but there's just, has there ever been a case suggesting that this would not come, that the officers would not be immune under the FTCA for swearing out a search warrant affidavit just as a discretionary function? And it seems like the FTCA really has nothing to say about this either. No, I mean, I did not find that, Your Honor, but I would say that... I didn't hear what you said. What did you say in response? That I did not look into that specific issue, Your Honor, but courts have recognized that and... Well, if they're at least theoretically available, but what if they're not? Well, then, Your Honor, I would point you to the Farrer case, which says that the fact that these remedies may not directly apply or do not allegedly sufficiently compensate Mr. Annaparetti for his injuries does not change the analysis. And what courts... That's where I started, but I understand them to be saying, look, the fact that your individual person may not be eligible for Congress had this in mind and chose not to cover it. But I'm saying I look at this remedial structure and I don't see any... I don't see how I can infer from this that Congress was even thinking about officers swearing out an unlawful Frank's affidavit and decided not to cover it. It looks to me like they weren't even in the same general area as that example. That's my concern. I understand, Your Honor. The only thing I would say is that the remedy for the alleged falsities in the warrant affidavit under the current structure in federal jurisprudence was a Frank's hearing during the criminal case, not a Monday morning quarterback analysis eight years later. Isn't his claim that he didn't know they were lying in the Frank's affidavit because everyone was busy fabricating evidence and destroying documents, so he didn't find out until later? What was he supposed to do? He claimed that he did not learn that the medic analysis, which was just a small part of the warrant affidavit, he did not know about that until 2015. However, if you look at the actual allegations in the case and our brief, we listed at least 13 items in that warrant affidavit that the owner, CFO, former CEO, founder of the company would clearly have been on notice of at the time of a Frank's hearing would have been appropriate to raise the criminal case. And I would leave, Your Honors, I know I've gone over time with the we believe Congress would have had one. And I would defer to Wes Wintermeyer, who's now going to address the issue of immunity. May it please the court. I'm Wes Wintermeyer. I represent Special Agent Robert Mosley. I'm speaking for him and the four other dismissed business defendants. I'm going to address the of that Frank's claim. And given time, I will address the immunity issues. Speaking about Frank's and the alleged fabrication of evidence before his trial, absolute immunity fields, the activities of aiding Mosley, Bianco, and Ryan, because they're alleged to fabricate evidence in one form or another. Under Imbler, we don't look at labels. You don't have to have the title prosecutor to be entitled to absolute immunity. You keep going in and out. Excuse me. Keep going in and out. I'll get a little closer. We, of course, look to the functional nature of the activities involved. The Supreme Court's decision in Buckley v. Simmons is very instructive. It says that after the decision to seek an indictment had been made, that the activities taken around or after that are much more likely to be related to the prosecutorial effort. Timing doesn't control there, but it is actually relevant. The decision to seek an indictment is made. These descriptions fit the actions of the year. Judge Moss, you previously asked the proper question, if these activities were investigated, there would be no immunity. But under the facts here, these actions were not purely investigated. Mr. Annaparetti alleges that his investigation began in May 2012, and the search warrant and the grand jury indictment here were issued over one year later, July 2013. It was well beyond the investigation into the decision that the indictment should be reached that Agents Blading and Mosley shared their affidavits, presented that to the magistrate on the morning of July 23, 2013, and then later presented it to the grand jury that were in the indictment later that same day. It was not until the 24th that the arrest warrant was issued, and then the 25th when the searches were executed. Under those circumstances, their activities viewed as the common nucleus of fact in which they were alleged, those were prosecutorial activities to secure an indictment under which Mr. Annaparetti was officially prosecuted. Adding Agents Capobianco and Ryan into the picture, their activities fit into the same circumstance. They're alleged to have only taken actions after the return of the sent an email in February 2014 requesting the preparation of certain calculations that were, the plaintiff alleges, presented to a grand jury to return the superseding indictment. Similarly with Ryan, he put together a spreadsheet that was used to return the superseding indictment. The allegations there necessarily tied those agents' activities to the return of indictments by the grand jury, and precedent holds this type of activity is prosecutorial and therefore entitled to absolute immunity. We also addressed why qualified immunity would be applicable to these pre-trial activities for various factors. I'd like to turn to the post-trial disposal of documents on the basis of account 13 against Prosecutor Wilkinson and Agents Mosley and Ryan. Mr. Klecker previously explained why absolute prosecutorial immunity applies to that decision for Wilkinson to dispose of certain unused documents that she determined would not be used in the new trial, but the court could affirm for the alternative reason qualified immunity applies because Agents Wilkinson, Mosley's, and Ryan's action after trial did not call Mr. Annaparetti a constitutional violation of these circumstances. It's undisputed that his trial counsel had access to the documents before and during his five-week trial. It was only after his conviction, several months after his conviction, that a decision was made that those unused documents were no longer needed to be disposed of. Judge Anderson, the district court judge below, he correctly reasoned that proximate cause was missing, and he actually dismissed one count of the complaint against the debris defendant for that reason. With the same reasoning, it extends to the Bivens defendant. Account 13 can be dismissed for the alternative reason. With that, I thank the court for its time. We ask that you confirm your dismissal of the Bivens claim. Thank you, Mr. Widemeyer. Your Honor, may I be heard just briefly on an administrative matter? This is Brian Frye for Ms. Wilkinson. Is it to clear up something in the record? No, Your Honor, purely administrative. I just wish to note for the court that counsel for Mr. Capobianco and Mr. Ryan are on the line and available for a question should the court have any. They are not on video because of the time constraints with oral argument, but wanted to make clear that they apologize. I didn't realize I was muted. Your Honor, I have five points in rebuttal with respect to the Franks claims, further addressing Your Honor's questions about those claims. Number one, there is no allegation of a grand conspiracy. The Franks claims are based on, well, first of all, the notion that our whole complaint is based on a grand conspiracy is inaccurate. The Franks claims make up the bulk of the complaint, and they're not based on a grand conspiracy. They're based on defendants Lading and Mosley submitting recklessly or intentionally submitting a materially false warrant affidavit. Those are discrete facts. The Franks claims are based on a completely different set of events than the other claims. Counsel, why didn't you bring a Franks claim at the time of the criminal proceedings when the affidavit was filed? So, Your Honor, first of all, the information essential to bring the Franks claims was suppressed by the United States government in violation of the... Okay. Okay. That's what I thought. So, how is this separate from those other claims? I mean, your entire Franks claim, the whole reason you didn't bring it is because, allegedly, there was a grand conspiracy to suppress the evidence that would have allowed you to bring the Franks claim. Respectfully, Your Honor, the evidence that should have been disclosed under Brady, and that was essential with respect to the duplicate claims issue in Medic 1495, the fact that that was improperly suppressed should not be held against Mr. Annaparetti. And, moreover, this is a case really more like Humbert, where the case ended before the Franks claim was litigated. In that case, also, the government abandoned the case and it was favorably terminated before the motion's deadline for Franks claims postdated Judge Russell's dismissal of ruling on September 1st, 2016, there would have been a Franks motion. So, that should not be... Mr. Annaparetti and Pharmacare should not be penalized for that. That's... It would be fundamentally unfair, frankly, to hold it against Mr. Annaparetti and Pharmacare that the government suppressed the information needed to bring the Franks claims. That would create an incentive for the government to suppress information in other cases that would deny criminal defendants the opportunity to bring Franks motions, as well as, you know, potential, let alone in other situations. Now, under lull, this court's decision lull, nothing that happened after the lading affidavit was submitted, after, as defendants say in their brief, defendant Mosley participated in preparing it, providing information for it, and after a defendant lading submitting it, nothing that happened afterward is relevant in terms of evaluating what they did. Now, the fact that information was suppressed and was obtained later, that's not inconsistent with lull at all. And in fact, Humbert actually fully supports that point. So, it's really... We're looking at a discrete time frame. We're looking at, you know, right around, you know, essentially, you know, the short period around July 23rd, 25th, 2013, maybe the weeks leading up to it when the Warren affidavit was prepared. This is not a case that's It would not require any kind of, you know, intrusive discovery. This is not a case where, you know, we would have, if limited to the Franks claims, it would not, it really would impose minimal burdens. And with respect to... I have a question, if you don't have anything that you need to say right this minute. Can we just answer two questions about Ms. Pascali for me? First of all, what evidence specifically did she fabricate? Thank you, Your Honor. I actually had meant to bring that up. So, there are specific allegations against defendant Pascali for fabricating evidence. And by the way, the counsel's argument that the fact that it happened after the charges were brought, that is inconsistent with the Supreme Court's decision in Buckley, footnote five, and the recent decision by the Third Circuit in Fogle. Now... Sorry, I'm getting to your question. Let me just, I know you have so much to get to clarify. So, I am taking from what you just said, that the evidence you're about to point to is post indictment evidence. Allegations of post indictment fabrication, which you think... This is a different series of events involving different actors in different periods of time than the Frank's claims. Totally different. There's no... Again. And so here, the relevant allegations, these were discussed more fully on pages six and seven of our response brief. But in short, as defendant Wilkinson said, told Judge Russell on behalf of her and defendant Pascali, I don't know that the investigation will ever stop, Your Honor. Later adding, I will never stop investigating. That's in JA 155, paragraph 169. During the summer of 2014, they were continuing the investigation. That's JA 157, 173. More specifically, in July 16, 2014, defendant Wilkinson informed defense counsel that she and defendant Pascali had asked their internal auditors to do the analysis slash review. That's paragraph 174 of the complaint. Counsel, I'm sorry. You have a great knack. I'm a good trial lawyer to talk really fast. You have other information in. But let me ask you this. So, I just want to be sure what you're saying. You're representing to us that the allegations about Pascali fabricating all of that evidence was post the indictment. That's what you've been talking about right now. Based on the allegations in the complaint, yes, Your Honor. Okay. Now, to be clear, the complaint goes on to say that the draft summary exhibit that was produced by defendant Wilkinson on behalf of herself and defendant Pascali had numbers identical to the false calculations the government later introduced the trial and that Judge Russell found were the most significant evidence in the case. That was after they abandoned Medic because Medic didn't want to do the numbers the way they liked. Medic wanted to change things. They didn't like that. That's alleged in the complaint. And those numbers in the draft that defendants Wilkinson and Pascali orchestrated that were presented in the trial, those were materially false as alleged in the amended complaint. Very quickly, with respect to... So, I think I've addressed the notion that the fabrication claims against Pascali are contingent on discovery. That's incorrect. And unless Your Honors have any other questions, I would just sort of rest on what I've said and really sort of the overarching point is that the Franks claims, discrete period of time, two defendants, and this is very different. Oh, and I actually have one other point that I meant to mention that Judge Harris, you had asked about treating claims separately as opposed to the whole case. In Abbasi itself, the Supreme Court did that. They analyzed the, I think, so-called detention policy claims separately from the prisoner abuse claims. And they even remanded the latter for a ruling on special factors to show how separately they treated them. So, I'm not saying that always has to be done, but the Supreme Court did that in Abbasi. So, it would certainly be fully consistent with Abbasi to do likewise here. I think I'm over my time, so I... Can I just ask you, just to clarify quickly, I understand you're pressing your Franks claim under Bivens. Are you arguing on appeal that the district court erred in dismissing the Bivens against the prosecutors or in dismissing the Bivens claims with respect to Fifth Amendment due process claims? Is that something... That is absolutely something we argued. We make that clear in our opening brief and our reply. It was counsel for defendant Wilkinson was incorrect in saying that we abandoned those claims. However, we do believe that the Franks claims are a much easier call in reversing than the other claims. All right. Mr. Wintermeyer. I think we're done here. Yes, sir. I was going to rebut on the cross appeal of the immunity issues. And just on that, just that we've heard that much of the conduct here has occurred post-indictment for which all the agents involved would have immunity because the decision for probable cause had already been made. On the idea that the allegations here are somehow something different than a grand conspiracy between agents and prosecutors to get a conviction to try Mr. Amparetti and to secure that conviction, I'd refer you to the specifically alleges that the prosecutors Wilkinson and Pascal learned after the superseding indictment that the analysis, the loss calculation analysis, and it was flawed. And yet they proceeded to present similar flawed evidence to a jury, get a conviction, and tried to protect that through fighting a new trial and then pursuing an appeal. So the allegations do suggest that this was all one conspiracy between agents and prosecutors for which we think the actors are entitled to immunity. Thank you. Thank you so much. Thank all counsel for your great engagement and arguments and regret we can't come down and greet all of you under the circumstances, but please know that our appreciation. Nonetheless, thank you so much for your work. Be safe and stay well. With that, I'll ask the clerk to, I guess, adjourn the court for the day. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Roger L. Gregory, Diana Gribbon Motz, Pamela A. Harris